UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60557-CIV-DIMITRIOULEAS/SELTZER

THAO N. SANDS,

       Plaintiffs,

v.

WAGNER & HUNT, P.A., a Florida
Corporation, and CAVALRY PORTFOLIO
SERVICES, LLC, a foreign limited liability
company,

       Defendants.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE is before the Court on Plaintiff's Motion to Enforce Terms of Settlement Agreement (DE 5) and was referred to the undersigned pursuant to 28 U.S.C. § 636.[1]  Having carefully considered the briefed motion (DE 5, 7, 10, 20, 22, and 23), received evidence in this matter, and heard argument thereon, and being otherwise fully advised, the undersigned respectfully RECOMMENDS that the motion be GRANTED.

I.    PROCEDURAL BACKGROUND AND FACTUAL FINDINGS

The undersigned has received documentary submissions and taken testimony in this matter, and based on the evidence presented, makes the following findings of fact.[2]

_____

[1]  On May 18, 2009, the motion was referred to Magistrate Judge Lurana S. Snow (DE 6).  On August 5, 2009, Judge Snow recused (DE 17), and the matter was reassigned to the undersigned.  On August 14, 2009, the undersigned conducted an evidentiary hearing (DE 19) and directed the parties to file supplemental briefs on or before August 21, 2009 (DE 22 and 23).

[2]  To the extent that any findings of fact constitute conclusions of law, they are hereby adopted as such; to the extent that any conclusions of law constitute findings of fact, they are also adopted.

On April 15, 2009, Plaintiff Thao Sands filed this action against Defendants – Wagner & Hunt, P.A. and Calvary Portfolio Services, LLC – alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the Florida Consumer Protection Practices Act., Fla. Stat. § 559.55 et seq. ("FCCPA"); the action arises out of the seizure and sale of Plaintiff's automobile.  See Complaint (DE 1);[3] Answer (DE 5).  Shortly thereafter, Plaintiff's counsel, attorney Scott Owens ("Owens"), contacted Defendants' counsel, attorney Deryl Hunt (" Hunt"), and provided him with a courtesy copy of the Federal lawsuit prior to service of process.  On April 21, 2009, after he had reviewed the Complaint, Hunt telephoned Owens and Hunt inquired as to settlement.  Hunt asked what could be done "to get this [federal] case resolved," and he asked Owens to make an offer.  Hunt testified that he understood "resolution" to mean a dismissal of the Federal lawsuit.

Thereafter, Owens conferred with Plaintiff.  On April 22, 2009, Owens sent Hunt an e-mail with the following settlement terms: "In regards to our settlement discussions yesterday, please find my offer as follows: $2500.00 dollars [*sic*] global settlement, complete wipe out of debt (including deletion of tradeline and dismissal of the state court lawsuit with prejudice).  This offer relates to both Cavalry and Wagner & Hunt.  I cannot go below this number."  Plaintiff's Exhibit B (DE 5).  In response, on April 27, 2009, Hunt sent Owens an e-mail that stated: "Wagner & Hunt, P.A. and Cavalry accept your offer. I will prepare a settlement agreement and mutual releases."   Plaintiff's Exhibit C (DE 5)

---

[3] According to Plaintiff, "the complaint alleges that Defendants unlawfully attained a judgment in a related state court lawsuit and then later seized Plaintiff's vehicle based upon the unlawfully obtained judgment."  Motion to Enforce at 2 (DE 5).

(emphasis added).

Owens testified that the settlement agreement and mutual releases would memorialize that Plaintiff would dismiss ("release") the Federal lawsuit against Defendants with prejudice in exchange for Defendants' paying Plaintiff $2500, inclusive of all damages and costs ("global settlement"), deleting the tradeline, and dismissing the state court lawsuit with prejudice.   To that point, neither attorney had ever discussed the matter of confidentiality.

After receiving Defendants' acceptance of his client's offer, and in an abundance of caution,[4] Owens sought to confirm that Defendants that would not, after the fact, insert a confidentiality provision into the written agreement.  Accordingly, on April 28, 2009, Owens e-mailed Hunt as follows: "FYI: as a matter of policy, I will not agree to any confidentiality provision. Thx."  Plaintiff's Exhibit C (DE 5).   Hunt responded, notifying Owens that "Cavalry insists upon a confidentiality provision as does my firm.  If you are willing to make an exception to your policy then we will proceed with the settlement.  If your position is firm, then please advise and we will direct our counsel to file a responsive pleading."  Plaintiff's Exhibit D (DE 5).   On April 29, 2009, Owens replied to Hunt: "I respectfully consider this a closed matter.  The original offer stated nothing with respect to confidentiality.  The offer was accepted by Cavalry and your law firm as a result of your communication on April  27, 2009."   Plaintiff's Exhibit D (DE 5).[5]

---

[4]  Owens testified that he had previously encountered opposing counsel who had sought the inclusion of a confidentiality provision.

[5]  The parties do not dispute either the existence or the content of the pertinent e-mails exchanged between them. See Amended Joint Status Report (DE 20) (identifying agreed factual and legal issues).

Defendants then proceeded to defend the Federal lawsuit.  On May 5, 2009, they answered the Complaint, denying all material allegations and asserting affirmative defenses.  See Answer (DE 4).  On May 15, 2009, Plaintiff filed the instant Motion to Enforce Terms of Settlement (DE 5), arguing that on April 27, 2009, the parties had reached a full and final settlement, with "definite and certain" essential terms to which "Defendants ha[d] assented."  Motion at 1 and 8 (DE 5).

II.    THE LAW

"A district court has jurisdiction to enforce settlement agreements when one party refuses to abide by the agreement prior to dismissal." Le Bon Pain, Inc. v. Guyon and Co., Inc., 720 F. Supp. 983, 984-85 (S.D. Fla. 1989) (citing Kent v. Baker, III, 815 F.2d 1365, 1398 (11th Cir. 1987)); Ford v. Citizens and Southern National Bank, 928 F.2d 1118, 1121 (11th Cir. 1991) (discussing the district court's inherent power to enforce settlement agreements); accord Reed v. United States, 717 F. Supp. 1511, 1514 (S.D. Fla. 1988) (district court retains inherent authority to "summarily enforce a settlement agreement entered into by litigants while litigation is pending before it.").  This enforcement authority covers not only written but also oral settlement agreements.  See Welch v. N. Am. Tank Line, Inc., No. 8:06-CIV-23450-T-17-MAP, 2008 WL 3982394, at *2 (M.D. Fla. Aug. 25, 2008) ("A court is empowered to enforce oral settlement agreements."); Am. Appraisal Assoc., Inc. v. Am. Appraisals, Inc., 531 F. Supp. 2d. 1353, 1358 (S.D. Fla. 2008). "Indeed, the power to implement a settlement agreement between the parties inheres in the district court's role as supervisor of the litigation, and the exercise of that power is entrusted to the court's sound discretion." South Beach Suncare, Inc. v Sea & Ski Corp., Case No. 98-1114-CIV-MORENO, 1999 WL 350458, at *6 (S.D. Fla. May 17, 1999).

4

"A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905 (11th Cir.1987) (citing Wong v. Bailey, 752 F.2d 619, 621 (11th Cir.1985)).  Florida applies an "objective test" to determine whether a contract, or a settlement, may be duly enforced.  See Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985) (noting that the test considers not whether there was an "agreement of two minds in one intention, but on the agreement of two sets of external signs – not on the parties having meant the same thing but on their having said the same"); see also Schwartz, 807 F.2d at 905 ("The Court's role is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement.")

Specifically, under Florida law,"[t]o compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." Spiegel v. H. Allen Homes, Inc., 834 So. 2d 295, 297 (Fla. 4th DCA 2003) ("uncertainty as to nonessential elements . . . will not preclude enforcement of a settlement agreement"); accord Sav-A-Stop, Inc. v. Jaydon, Inc. (In re Sav-A-Stop Inc.), 124 B.R. 356, 359 (Bankr. M.D. Fla. 1991) (concluding that a settlement "is enforceable if it is sufficiently specific to be capable of implementation and all the essential elements are set forth").  Execution of the settlement agreement is not a condition precedent to a settlement agreement, but merely a procedural formality.  See Boyko v. Ilardi, 613 So. 2d 103, 104 (Fla. 3d DCA 1996).  To determine whether there exists an enforceable contract, courts look to traditional notions of offer and acceptance and to basic contract law.  See Robbie,

5

469 So. 2d at 1385.

The party seeking to enforce a settlement agreement bears the burden of showing that the opposing party assented to the terms of the agreement.  See Carroll v. Carroll, 532 So. 2d 1109 (Fla. 4th DCA 1988); Long Term Mgmt., Inc. v. Univ. Nursing Center, Inc., 704 So. 2d 669, 673 (Fla. 1st DCA 1997) (noting that the party seeking to enforce a settlement agreement has the burden of establishing "a meeting of the minds or mutual reciprocal assent to a certain and definite position" and such a finding "must be supported by competent substantial evidence").  However, "[s]ettlement agreements are highly favored, and will be enforced whenever possible."  Robbie, 469 So. 2d at 1385;  Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1486 (11th Cir. 1994) ("We favor and encourage settlements in order to conserve judicial resources.").

III.   ANALYSIS/CONCLUSIONS OF LAW

The undersigned concludes that Hunt and Owens, as authorized representatives of their respective clients,[6] agreed as to all essential terms of the settlement.  Stated differently, there was an "agreement of two sets of external signs"; they "said the same [thing]."  Robbie, 469 So. 2d at 1385.  Accordingly, the agreement is binding and enforceable.

First, Hunt and Owens agreed to resolve their clients' dispute.  Without conditions,

---

[6] There exists no dispute that attorneys Hunt and Owens each had "clear and unequivocal authority" to enter into a binding settlement agreement on their clients' behalf.  See Murchison, 13 F.3d at 1485; see also Vital Pharm., Inc. v. S.A.N. Nutrition Corp., No. 06-60646-CIV, 2007 WL 1655421, at *4 (S.D. Fla. June 6, 2007) ("In determining whether an enforceable settlement agreement exists, the Court must determine two legal questions: first, whether . . . [counsel] has 'clear and unequivocal authority' to enter into a binding settlement agreement on behalf of his client . . . and second, whether a binding agreement was reached . . . .").

they mutually assented to terms – Plaintiff's dismissing the Federal lawsuit against Defendants with prejudice in exchange for Defendants' paying Plaintiff $2500, inclusive of all damages and costs, deleting the tradeline, and dismissing the state court lawsuit with prejudice; it was later proposed that this oral agreement be memorialized in writing.  <u>See</u> Plaintiff's Exhibit B (DE 5) (April 22, 2009 e-mail from Owens to Hunt presenting settlement offer in response "to our settlement discussions yesterday," wherein Hunt had asked Owens what could be done "to get this [federal] case resolved [dismissed]"); Plaintiff's Exhibit C (DE 5) (April 27, 2009 e-mail from Hunt to Owens stating, "Wagner & Hunt, P.A. and Cavalry <u>accept</u> <u>your</u> <u>offer</u>. I will prepare a settlement agreement and mutual releases.") (emphasis added); <u>see also</u> <u>Am. Appraisal Assoc.</u>, 531 F. Supp. 2d at 1358 (Torres, M.J.) ("If an offer is accepted without conditions, and without varying its terms, and the acceptance is communicated to the other party without unreasonable delay, a contract arises, from which neither party can withdraw at its pleasure.") (citations omitted).

Second, the parties' agreement incorporated all the essential terms: Defendants would pay a sum of money, dismiss the underlying state court action, and delete the tradeline; Plaintiff, in turn, would dismiss the instant Federal action.  <u>See</u> <u>Nicholas v.</u> <u>Hartford Ins. Co. of the Midwest</u>, 834 So. 2d 217, 220 (Fla. 1st DCA 2003) ("The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis."); <u>Giovo v. McDonald</u>, 791 So. 2d 38, 39 (Fla. 2d DCA 2001).  Hunt's unequivocal assent – "Wagner & Hunt, P.A. and Cavalry <u>accept</u> <u>your</u> <u>offer</u>"– evidences not only his clients' recognition that the agreement contained the essential terms, but also their intent to be bound by them. <u>See e.g.</u>, <u>Blackhawk Heating</u> <u>and Plumbing Co, Inc. v. Data Lease Fin. Corp.</u>, 302 So. 2d 404, 408 (Fla. 1974) ("Even

7

though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them."); Schwartz, 807 F.2d at 905 ("Words in a contract are to be given their plain and ordinary meaning, it is not for the court to add or subtract language . . . ."). And although Defendants now contend that "confidentiality" is an essential, yet missing, contract term, that term was first injected into the discussion only after the parties had already agreed to all the essential terms.  See, e.g., Murchison, 13 F.3d at 1487 ("We favor and encourage settlements in order to conserve judicial resources.  We cannot allow a litigant to attack the integrity of the settlement process by attempting to recharacterize the focus of his litigation after he decides he is unhappy with the settlement."); B.P. Products N.A., Inc. v. Oakridge at Winegard, Inc., 469 F. Supp. 2d 1128, 1139 (M.D. Fla. 2007) ("A litigant cannot permissibly attack a settlement simply because the relief that he apparently wanted and the relief to which he agreed were not the same."); Lanza v. Damian Carpentry, Inc. et. al., 6 So. 3d 674, 675 (Fla. 1st DCA 2009) (rejecting attempt to repudiate a binding settlement agreement by raising ancillary issues after settlement had taken place).

Finally, the undersigned finds here that the proposed confidentiality provision  is an ancillary matter; it is directed to the manner in which the agreement would be implemented and its exclusion does not bar enforcement of the settlement agreement.[7] See McDonnell

---

[7]  Furthermore, Defendants' suggestion that settlement was contingent upon the drafting of a release is unavailing; the release would have merely memorialized the essential terms to which the parties had previously agreed.  See, e.g.,  Allapattah Servs. v. Exxon Corp., Case No. 91-0986-Civ-Gold/Simonton and Case No. 05-21338-Civ-Gold/Simonton, 2007 U.S. Dist. Lexis 71379, at *15 (S.D. Fla. Sept. 26, 2007) ("The release is not an essential term of the [settlement] agreement as it merely reflects the

v. Engine Distribs., Civil Action No. 03-1999,  2007 WL 2814628, at *8 (D.N.J. Sept. 24, 2007) (finding that the disputed terms, concerning scope of the release, ensuring payment, tax treatment, indemnification, and the scope of confidentiality, all speak to the settlement's implementation; they are not, however, essential settlement terms); see also De Cespedes v. Bolando, 711 So. 2d 216, 218 (Fla. 3d DCA 1998) (finding a binding settlement agreement even though certain issues were not discussed or agreed upon by the parties; the court did "not believe the issues were essential to the enforceability of the agreement" and concluded that the "lower court erred in denying the enforcement of this settlement agreement"); Stempel v. Stempel, 633 So. 2d 26, 26-27 (Fla. 4th DCA 1994)  (agreement enforceable even though it was a mere bare-bones agreement and one party had argued that additional  terms should have been included); Robbie,  469 So. 2d at 1385 ("Parties to a contract do not have to deal with every contingency in order to have an enforceable contract."). [8]

In sum, because the parties "said the same" things, they bound themselves to an enforceable settlement agreement.  Defendants' proposed confidentiality provision is an additional term, which is non-essential and to which both parties never agreed.

---

conclusive effect of the agreement in the claims process."); see also Plaintiff's Exhibit C (DE 5) (Hunt's email stating that "I will prepare a settlement agreement and mutual releases," memorializing the clear and essential terms).

[8]  Despite Defendants' suggestion (at the hearing) to the contrary, the absence of a general time for performance is not fatal to the enforceability of this contract. "The general Florida rule is that when a contract does not expressly fix the time for performance of its terms, the law will imply a reasonable time." Denson v. Stack, 997 F.2d 1356, 1361 (11th Cir.1993); Doolittle v. Fruehauf Corp., 332 So. 2d 107, 109-10 (Fla. 1st DCA 1976) ("When there is no time set for the performance of a certain act, it is interpreted to mean that the act must be done within a reasonable time.").

IV.    CONCLUSION

Based on the foregoing, the undersigned concludes that the parties reached a full and final settlement as to definite and essential terms.   Accordingly, the undersigned respectfully RECOMMENDS as follows:

1.      That Plaintiff's Motion to Enforce Terms of Settlement Agreement (DE 5) be GRANTED and that within a reasonable time period the parties be DIRECTED to comply with the terms of the oral agreement previously reached - Defendants' paying Plaintiff $2500, inclusive of all damages and costs, deleting the tradeline, and dismissing the state court lawsuit with prejudice and Plaintiff's dismissing the Federal lawsuit against Defendants with prejudice; and

2.      That each party bear its own costs and attorney's fees incurred in litigating these enforcement proceedings.[9]

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley

---

[9]  The parties did not provide for the award of fees and costs in the enforcement of the Settlement Agreement.  See B.P. Products N.A., 469 F. Supp. 2d at 1148 n. 9 (finding an enforceable settlement agreement reached but "awarding no fee or costs" since this provision was not included in the agreement); cf. Spiegel, 834 So. 2d at 297 (parties entitled to fees for enforcement of settlement agreement where such language was included in the agreement).

v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

        DONE AND SUBMITTED at Fort Lauderdale, Florida, this 28th day of August 2009.


BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Honorable William P. Dimitrouleas
United States District Judge

Counsel of Record

11